UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL F. MCNALLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-00063-TWP-WGH |
| | ) | |
| AZTAR INDIANA GAMING COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Aztar Indiana Gaming Company, LLC's ("Aztar") Motion for Summary Judgment (Dkt. 34). Plaintiff Michael McNally ("Mr. McNally") brought claims against Aztar under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), alleging Aztar terminated him because of a perceived disability. For the reasons set forth below, Aztar's motion for summary judgment is **GRANTED**.

## I.  BACKGROUND

The following material facts are viewed in the light most favorable to Mr. McNally as the non-moving party. Aztar[1] is a riverboat casino located in downtown Evansville, Indiana. Mr. McNally was hired as a Bridge Mate in 1995 and was promoted by Aztar through its ranks to become Aztar's Director of Facilities/Marine Services. He worked in that capacity until his termination in August 2011. As a Director, Mr. McNally reported to and was supervised by Ward Shaw ("Mr. Shaw"), Aztar's General Manager. Mr. Shaw had instructed all Senior Leadership Team ("SLT") members, including Directors, to inform him if they were going to be

---

[1] Casino Aztar is now Tropicana Evansville.

gone off the property for an extended time during the work day.  Mr. Shaw addressed this policy at an SLT meeting on June 23, 2011, the minutes of which state that all SLT members "should let Ward know if they will be gone from the property for an extended time during the work day…."  Dkt. 36-2 at 81.  However, Mr. McNally believed he was only required to inform someone who might get word to Mr. Shaw of his extended absences, despite the specific instructions given during the meeting.

In June 2011, Mr. Shaw approached the Director of Security, Matt Pressley ("Mr. Pressley") and asked him to monitor Mr. McNally's arrival and departure times over a two week period in response to concerns Mr. Shaw had about Mr. McNally's attendance.  Mr. Pressley prepared a log of Mr. McNally's arrival and departure times for July 11, 2011 through July 27, 2011 by watching the facilities' video surveillance footage.  On July 12, 2011, Mr. McNally left the property to collect documents for a personal insurance claim, but did not inform Mr. Shaw of his absence.  On July 14, 2011, Mr. McNally left work in the morning, but did not advise Mr. Shaw that he would not be returning that day.  On July 15, 2011, Mr. McNally left Aztar at 10:25 a.m. and returned five and a half hours later to pick up his dry cleaning, then left the Aztar property again.  On July 27, 2011, Mr. McNally arrived late for a scheduled disaster drill, which fell under Mr. McNally's department as Director of Facilities/Marine Service.  Under all of these circumstances, Mr. McNally believed that he was not required to inform Mr. Shaw of his absences directly or that he was not required to inform Mr. Shaw at all.  Instead, Mr. McNally would inform either his own administrative assistant or Mr. Shaw's administrative assistant of his absences.

Mr. Shaw also had concerns about Mr. McNally's alleged misuse of Aztar's manager comp privileges.  As a Director, Mr. McNally had manager comp privileges which allowed him

to sign receipts with a comp code for services or food within the Aztar facility.  These comps were to be used for reasonable business purposes, and Mr. Shaw informed SLT members during at least two meetings that they should note the purpose of the occasion and the name(s) of those the SLT member dined with on the meal ticket.  Mr. Shaw was responsible for reviewing comps utilized by Directors, including Mr. McNally, for completeness and legitimacy.  On July 28, 2011, Mr. McNally went to Blush Ultra Lounge at Aztar with eleven current and former Aztar employees and used his comp privileges to pay the liquor bill.  Mr. McNally wrote "J.E. Shekell," which was one of Aztar's vendors, on the receipt as the reason he used the comp; however, no one from J.E. Shekell was at the gathering.  Mr. McNally acknowledged that he put the false information on the comp receipt, but says it was done by mistake.  Mr. Shaw terminated Mr. McNally in August 2011.

Mr. McNally alleges that he was terminated because Aztar perceived he had a disability related to depression.  At the end of the conversation in which Mr. Shaw terminated Mr. McNally, Mr. Shaw recommended that he seek professional counseling to deal with his personal issues that were now compounded by his job loss.  Prior to his termination, Mr. McNally had experienced a house fire and was going through a child custody dispute, and expressed to Mr. Shaw and another human resources employee that he had a lot of things going on in his personal life.  During this time, however, Mr. McNally did not express to Mr. Shaw or anyone else at Aztar that he was experiencing depression or any other mental impairment.  As part of his employment at Aztar, Coast Guard licensure was required and on March 21, 2100 Mr. McNally filled out his licensure application.  At that time believed his mental health was fine, therefore, he did not disclose any mental impairment on his Coast Guard licensure application.  Mr. McNally had attended counseling with Licensed Clinical Social Worker Richard Rust on five

occasions between 2009 and 2011 for issues related to his relationship with his girlfriend; however, he never told anyone at Aztar that he was seeing a counselor.  Additional facts will be added as necessary.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment."  *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

Mr. McNally does not allege that he had an actual disability at the time of his termination.  Rather, he alleges that Aztar regarded or perceived him as disabled and terminated him on this basis.  An employer is prohibited from discriminating against a qualified individual employee with a disability or perceived as having a disability because of the disability or perceived disability.  *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). [A]lthough an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling.. . . . .[I]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*) at 352 (1999). *Id.* The concern, therefore, is that employers will act on a misunderstanding of an individual's impairment with the result that a qualified, nondisabled person will be precluded from employment. *Id.*

To succeed on his claim, Mr. McNally must first show that he is "disabled" under the ADAAA, which defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1);  *Nayak v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:12-CV-0817-RLY-MJD, 2013 WL 121838, *1 (S.D. Ind. Jan. 9, 2013).  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C.A. § 12102(3).

**A.     Mr. McNally does not have a "disability" under the ADAAA**

Mr. McNally claims Aztar discriminated against him on the basis of his depression disability or perceived disability.  His discrimination claim fails because he has not presented sufficient evidence that Aztar regarded him as being disabled and thus falls under the protection of the ADAAA.  The only evidence Mr. McNally points to in order to demonstrate that Aztar perceived him as having a disability is the fact that at the end of the conversation in which he was terminated, Mr. Shaw stated that he knew Mr. McNally was going through a lot and suggested that he seek professional counseling. Mr. McNally also points to the fact that human resources director Sara Lipking ("Ms. Lipking") met with him in May 2011 out of concern for his emotional well-being and observed Mr. McNally crying on one occasion.

These facts, even viewed in the light favorable to Mr. McNally, fall short of showing that Aztar perceived him as having a mental disability, and the Court concludes no reasonable jury could make such a finding.  Aztar had no knowledge that Mr. McNally had previously seen a counselor for his relationship problems, and Mr. McNally admitted that he had no reason to believe that Mr. Shaw or any of the other Aztar Directors knew about his counseling sessions. McNally Dep. at 41:6-13, Dkt. 36-2 at 41.  Additionally, despite crying in front of Ms. Lipking while discussing situational stressors in his life, he told her that he was doing well.  McNally Dep. at 37:13-17, Dkt. 36-2 at 37.  Additionally, Mr. McNally does not recall any other occasion when he cried or exhibited emotional distress in front of Ms. Lipking, Mr. Shaw or other Aztar Directors. There is no evidence in the record to support the conclusion that Mr. Shaw and Aztar regarded Mr. McNally as disabled; at most it demonstrates that Mr. McNally was having difficulties in his personal life and his co-workers were concerned about the stress he was under

as a result. Because Mr. McNally has not presented a sufficient question of fact regarding whether Aztar regarded him as disabled, his claim fails.

**B.      Mr. McNally's termination was not based upon discriminatory motive**

Even if Mr. McNally were able to present sufficient evidence to show that Aztar regarded him as disabled, he cannot show that he was discriminated against on the basis of such perceived disability.  *See* 42 U.S.C. § 12112(a).  Mr. McNally argues that he can prove discrimination under both the direct and indirect methods of proof.

**1.      Direct Method**

Mr. McNally may establish intentional discrimination by producing either direct or indirect evidence of his disability.  Under the direct method, a plaintiff can present either direct evidence of discrimination, which requires an admission by the decision maker that his or her actions were based upon discriminatory *animus*, or by presenting circumstantial evidence that would allow a jury to infer intentional discrimination.  *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *see also Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013) ("A party may combine . . . various types of evidence to present a 'convincing mosaic of circumstantial evidence' from which a factfinder can make a reasonable inference of discriminatory intent." (additional citations omitted)).

Mr. McNally asserts that his "convincing mosaic" of evidence consists of Mr. Shaw's suggestion that he seek counseling following his August 2011 termination and Ms. Lipking's concern for his well-being at their May 2011 meeting.  He also argues that he never received any warnings about his attendance, that Mr. Shaw's expectations of him were unclear with regard to when he was to inform him that he would be off property during the work day, and that other Directors did not account for the purpose of gatherings or attendees on comp receipts.  However,

7

Mr. McNally does not dispute that he was away from the property for extended periods of time on multiple occasions and that he wrote the incorrect name on a comp receipt, nor does he dispute that Mr. Shaw addressed these requirements on multiple occasions.  Taken as a whole, this evidence would not lead a reasonable jury to conclude that discrimination was the "but for" cause of Mr. McNally's termination.  "[A]n ADA plaintiff 'must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed-motive will not suffice.'"  *Nayak*, 2013 WL 121838 at *3 (quoting *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 963 (7th Cir. 2010)).  Thus, the Court finds that Mr. McNally's claim fails under the direct method.

### 2.    Indirect Method

Mr. McNally's claim also fails under the indirect method of proof.  Under this method, Mr. McNally has the burden of establishing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably.  *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).  Once he has established this *prima facie* case, the burden shifts to Aztar to identify a legitimate, non-discriminatory reason for its employment decision.  *Id.*  If Aztar satisfies this requirement, Mr. McNally must then prove by a preponderance of the evidence that its reasons for his termination are pretextual.  *Id.*

Assuming for the sake of argument that Mr. McNally can meet the first prong of his *prima facie* case, his claim fails under the indirect method because he cannot show that he was meeting Aztar's legitimate employment expectations.  Mr. McNally does not dispute that he did not inform Mr. Shaw when he was absent for extended portions of the work day on multiple

occasions, but rather disputes whether he was required to do so.  Mr. McNally does not dispute the accuracy of the minutes from the June 23, 2011 SLT meeting in which Mr. Shaw explicitly stated "[a]ll SLT members should let Ward know if they will be gone from property for an extended time during the work day…."  Dkt. 36-2 at 81.  Mr. McNally offers no evidence in support of his assertion that it was acceptable for him to only tell his administrative assistant and manager that he would be out of the office.  Mr. McNally also does not dispute that he put the name of a vendor that was not in attendance at a gathering at a bar on a comp receipt, and instead was entertaining current and former employees.  The Seventh Circuit has stated that proper attendance and accurate documentation are legitimate expectations of employers.  *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760 (7th Cir. 2001) ("[C]oming to work, not falsifying documents, and not being insubordinate, are usually implicit expectations that an employer has for his or her employees . . . there can be no claim that these were not legitimate expectations of the company.").

Mr. McNally's arguments that Aztar did not provide him with any warnings or follow its progressive discipline policy prior to terminating him are also unavailing.  The Seventh Circuit has held that such evidence would only be relevant if the employee could show that he was performing up to his employer's legitimate expectation, and only applies to the issue of pretext. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997).   "*McDonnell Douglas* is for cases in which an employee is performing in a satisfactory manner but loses his job anyway; in such a case there is sufficient likelihood of discrimination to make it reasonable to require the defendant to produce evidence of a noninvidious reason for the alleged discrimination."  *Id*. Because Mr. McNally does not dispute that he did not report his absences to Mr. Shaw and put

the incorrect name and purpose on a comp receipt, the Court finds that he cannot satisfy the second prong of his *prima facie* case and his claim fails under the indirect method.

Finally, considering the longevity of his employment with Aztar and the difficulties which Mr. McNally was experiencing in his personal life, Mr. McNally's termination may be perceived as a harsh result. However, as the seventh circuit has frequently noted, the court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Instead, our task is to determine "whether the employer gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987).

## IV.   CONCLUSION

Based upon the foregoing, because Mr. McNally has not presented sufficient questions of fact from which a jury could find that he was regarded as disabled by Aztar and that his termination was based upon unlawful disability discrimination under the ADAAA, Aztar's Motion for Summary Judgment (Dkt. 34) is **GRANTED**.   Mr. McNally's claims are **DISMISSED**.

**SO ORDERED.**

Date: 01/28/2014 _____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

10

DISTRIBUTION:

John H. Haskin
JOHN H. HASKIN & ASSOCIATES
jhaskin@jhaskinlaw.com

Paul Anthony Logan
JOHN H. HASKIN & ASSOCIATES
plogan@jhaskinlaw.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com

Rhett David Gonterman
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
rgonterman@zsws.com